UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DAQUAN TURNER,

Plaintiff,

<b><u>SECOND AMENDED</u></b><br><b><u>COMPLAINT</u></b>

-against-

Jury Trial

17 CV 8563 (KBF)

THE CITY OF NEW YORK, P.O. PAZMINO (shield #1662),
P.O. FARMER (shield #1381), P.O. M PENNANT tax 951032,
(shield #23307)

Defendants.
-------------------------------------------------------------------X

Plaintiff DAQUAN TURNER by and through his attorneys, Vik Pawar, and Robert Blossner, Esqs., respectfully alleges as follows:

<b><u>PRELIMINARY STATEMENT</u></b>

1.    Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §§ 1983, and 1988 for violations of his civil rights, as secured by statutes and the Constitution of the United States.

<b><u>JURISDICTION</u></b>

2.    The action is brought pursuant to 42 U.S.C. §§ 1983, and 1988, and the Fourth, Sixth and Fourteenth Amendments to the United States and New York Constitutions.

3.    Jurisdiction is found upon 28 U.S.C. §§1331 and 1343.

## VENUE

4.    Venue is properly laid in the Southern District of New York under 28 U.S.C. § 1391(b), in that it is the District in which the claim arose.

## JURY DEMAND

5.    Plaintiff respectfully demands a trial by jury of all issues in the matter pursuant to Fed. R. Civ. P. 38 (b).

## PARTIES

6.    Plaintiff is a citizen of the United States, and at all relevant times was a resident of the County of Bronx, City and State of New York.

7.    P.O. Pazmino, P.O. Pennant and P.O. Farmer ("Defendants") are members of the NYPD and were assigned to the PSA-4 at the time of the incident.  They are sued in their individual and official capacities.

8.    Defendant City of New York ("City") is a municipal corporation duly organized under the laws of the State of New York.

## FACTS

9.    On January 31, 2015, around 4:40 a.m., plaintiff, who had just visited his relatives, was leaving 2140 Seward Avenue ("NYCHA" building), in the Bronx, New York.

10.    Around the same time, defendants were responding to the scene for a "domestic violence" call.

11.    Plaintiff was not a suspect, did not fit the description of the suspect and

otherwise acting lawfully when he encountered the defendants.

12.      Defendants inquired where plaintiff was coming from and plaintiff informed them that he had just visited his family in the NYCHA building.

13.      Instead of looking for the suspect who was wanted for the domestic violence incident, defendants started interrogating plaintiff.

14.      Plaintiff informed the defendants that he had nothing to do with the domestic violence incident and that the defendants can go upstairs and check with his family members that he was recently with them and not trespassing nor assaulting anyone.

15.      Instead, defendants tackled plaintiff to the ground, handcuffed him and started beating him up.

16.      The injuries were so severe that defendants had to transport plaintiff to the Hospital where he received treatment.

17.      Coincidentally, the victim of the earlier domestic violence incident was also at the same hospital (Jacobi Medical Center).

18.      Upon confronted by plaintiff's photograph, the victim and her family unequivocally stated that plaintiff was not the perpetrator.

19.      Realizing that they had committed a gross mistake and instead of simply releasing plaintiff from custody, defendants attempted to cover up their mistake by subjecting plaintiff to arrest and then charging him with various crimes (none of which were related to domestic violence).

20.     Defendant officers then transported plaintiff to a precinct with tightly cuffed handcuffs which restricted blood-flow and caused unnecessary pain and exacerbated plaintiff's existing injuries.

21.     Defendants then drafted false paperwork which was then forwarded to the DA's office for plaintiff's prosecution.  Based on the falsity of the charges plaintiff spent 48 hours in custody before he was released on his own recognizance ("ROR") by the judge.

22.     Plaintiff was on parole at the time and this false arrest enhanced his sentence as described later.

23.     Defendants' individual and collective conduct deprived plaintiff of liberty and he was not free to leave due to the pending charges against him which required his appearance in Court at the risk of being arrested for failure to appear.

24.     Plaintiff made repeated trips to the Court before the false and fabricated charges against him were thrown out on August 17, 2015.

### AS AND FOR THE FIRST CAUSE OF ACTION
(Unlawful Seizure, Excessive Force, Malicious Prosecution under the 4th Amendment,
Due Process Clause of the 14th Amendment)

25.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

26.     Plaintiff was stopped, frisked, seized and falsely arrested without probable cause by the defendants.

27.     Plaintiff's rights to be free from excessive and unreasonable force were violated when he was grabbed by the defendants, thrown onto the ground, tackled and punched and kicked by the defendants.

28.     In addition, plaintiff's Substantive Due Process rights under the Fourteenth Amendment and post-arraignment seizure under the Fourth Amendment were violated when defendants initiated criminal proceedings against him without probable cause.

29.     Defendants drafted false criminal court complaint paperwork against plaintiff and falsely charged him with (1) assault, (2) criminal trespass, (3) resisting arrest, (4) trespass and (5) harassment.

30.     The paperwork was then forwarded to the District Attorney's Office who continued the prosecution of plaintiff based on the false facts provided by the defendants.

31.     Defendants swore in their official NYPD paperwork that plaintiff's prosecution was justified even though they knew the contents of the paperwork to be false.

32.     Defendants were aware that there was no probable cause to arrest plaintiff let alone initiate criminal proceedings against him.  Therefore, they acted with malice.

33.     Defendants failed to retract the false charges against plaintiff and prolonged plaintiff's post-arraignment seizure and prosecution. Defendants' actions constituted malicious prosecution because they knowingly filed false and unsubstantiated charges against Plaintiff, failed to drop them, or inform the District Attorney's office of the falsity of the charges and instead pursued the charges knowing full well that the charges were not only false but trumped up, and fabricated.  In addition, the individual

defendants failed to show up for court hearings and unnecessarily prolonged plaintiff's liberty and violated his rights to substantive due process.  Lastly, defendants failed to inform the DA's office of exculpatory evidence that would have shown that plaintiff was not trespassing or was a suspect to the initial domestic violence call that brought defendants to the scene of plaintiff's arrest.

34.     The criminal proceedings terminated in plaintiff's favor when the charges against him were dismissed on August 17, 2015.

35.     As a result of the aforementioned conduct of all Defendants, Plaintiff's constitutional right to be free from unlawful seizure and malicious prosecution were violated.

## AS AND FOR A SECOND CAUSE OF ACTION
(Denial of Right to Fair Trial)

36.     Plaintiff repeats, reiterates, and realleges each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

37.     Defendants fabricated probable cause and detained and initiated criminal proceedings against plaintiff.

38.     The false and fabricated charge denied plaintiff the right to a fair trial or a hearing at the arraignment and during repeated court appearances.  Plaintiff was forced to appear in Court because of the false charges and his failure to appear would have resulted in a warrant issued for his arrest.[1]

---

[1] It is not uncommon that NYPD officers to submit falsely sworn complaints arresting and prosecuting citizens without probable cause and then committing perjury and/or manufacturing evidence in an effort to initiate criminal prosecutions against individuals like plaintiff.  *See Colon v. City of N.Y.*, No. 09 Civ. 8, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009) ("Informal inquiry by the court and among the judges of this

39.     The false statements by the defendants restricted plaintiff's freedom of movement because the false statements were forwarded to the District Attorney's Office which caused plaintiff to be prosecuted.

40.     All charges against plaintiff were dismissed on August 17, 2015.

41.     But for the false charges, that snared plaintiff nearly a year since his seizure and post-seizure deprivation of liberty, plaintiff would not have endured numerous court appearances and suffer a deprivation of his rights under the Fourth, Sixth and Fourteenth Amendments to the U.S. Constitution.

42.     In addition, defendants testified at plaintiff's hearing in Albany Court and contradicted their original sworn testimony for the arrest in this underlying case.  Because of the false testimony, plaintiff's sentence was enhanced by at least 2 years and he suffered deprivation of his substantive and procedural due process rights to liberty and due process.

43.     As a result of defendants' conduct, plaintiff suffered injuries.

### AS AND FOR A THIRD CAUSE OF ACTION
(Municipal Liability based on Violation of the Fourth Amendment and Substantive Due Process Clause of the Fourteenth Amendment)

44.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45.     The City through the NYPD has engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which

---

court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration ... there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.").

is forbidden by the Constitution of the United States and because the City was deliberately indifferent to the rights of individuals like plaintiffs. The City is aware that an individual NYPD officer would encounter a given situation like the one described in the complaint and would be forced to make a difficult choice of whether to effectuate police action or not. However, even though the City through the NYPD is aware that such an encounter would take place, they have been deliberately indifferent in failing to set measures into place to avoid wrongful choice/conduct that results in violation of the constitutional rights of individuals like plaintiffs. Despite being aware of these widespread actions by the NYPD (as alleged in the foregoing and following paragraphs) which have become a *de facto* policy with the full force of the law, NYPD failed to address them and that failure has constituted deliberate indifference.

46.     Plaintiff sets forth two (2) separate and distinct violations that form his Municipal Liability claim: (a) unlawful stop, frisk and search and the ensuing post-arraignment deprivation of liberty through malicious prosecution, and (b) arrests without probable cause for trespassing and the ensuing post-arraignment deprivation of liberty through malicious prosecution.

(a) Unlawful stop, search and frisk and the ensuing post-arraignment deprivation of liberty through malicious prosecution

47.     Plaintiff an African-American male was lawfully present at the premises when the officers stopped, searched and frisked him. Defendant City has failed to properly train individual defendants as to what constitutes a crime or probable cause to stop, frisk and search a person and initiate criminal proceedings against them.

48.     Defendant City through the NYPD has engaged in routinely stopping, frisking and searching minorities and initiate criminal proceedings against them without

probable cause simply because of their race.

49.     In addition, the widespread lack of training, or disciplining the officers within the NYPD allows officers to walk away with impunity while at the same time causing constitutional injuries to individuals like plaintiff.  Because of the lack of training on the law, individual defendants arrest and initiate criminal proceedings against innocent citizens like plaintiff.

50.     The conduct of the NYPD relating to unlawful stop, frisks and search and the ensuing post-arraignment deprivation of liberty through malicious prosecution is not an uncommon event.  The City has faced numerous lawsuits, complaints and notices that the NYPD engages in this type of behavior but has failed to curtail or address it through discipline or re-training the officers or simply being indifferent to the constitutional rights by retaining the offending officers and hiring more officers that would be susceptible to engaging in unconstitutional conduct because of lack of adequate training.

51.     In fact, Judge Scheindlin in *Floyd v. City of New York,* 813 F.Supp.2d 417, 422, (S.D.N.Y. 2011)[2], noted that "it is clear that the policing policies that the City has implemented over the past decade and a half have led to a dramatic increase in the number of pedestrian stops, to the point of now reaching 'almost 600,000 a year.'  There is 'a disturbingly large racial disparity in who is victimized by these practices,' although the precise extent of the disparity and its causes are matters of dispute.  This is not the first time the City of New York has been accused of racial profiling. In particular, a previous lawsuit before this Court, *Daniels v. City of New York,* was resolved through a settlement agreement requiring the City to adopt several remedial measures intended to

---

[2] The *Floyd* decision is attached as Exhibit 1 and is incorporated into this complaint.

reduce racial disparities in stops and frisks." Majority of the prosecution of these stops and arrests have been terminated in the arrestees' favor.

52.    In another decision, the Judge noted that racial disparities "exist in the context of the NYPD's long history of biased stop, question, and frisk activity."

53.    Due to the City's policies, the custom and practice of the NYPD officers and the lack of the City to implement (a) meaningful training materials, (b) adequate disciplinary measures, (c) additional supervision, (d) adequate hiring and retention procedures, when such implementation has been clearly warranted for over a decade, and an utter disregard to the Constitution, the City has been deliberately indifferent to the rights of its citizens like plaintiff. The foregoing failure to act or disregard a known occurrence that needed to be rectified, the City instead turned a blind-eye to these unconstitutional practices and was the proximate cause of the violation of individuals like plaintiff's substantive due process rights and plaintiff suffered injuries.

(b) Trespassing arrests and the ensuing post-arraignment deprivation of liberty through malicious prosecution

54.    The aforementioned customs, policies, usages, practices, procedures and the rules of the NYPD which included arresting and prosecuting innocent individuals like the plaintiff who are lawfully present at the premises but yet charged and prosecuted with trespassing is the direct result of the City's lack of training, disciplining or implementing adequate measures that amount to deliberate indifference to individuals' substantive due process rights.

55.    In addition, NYPD officers have faced several class action lawsuits dealing with arresting and prosecuting individuals for trespassing even though these individuals had a legal right to be at the subject location.

56.    The NYPD has a custom or policy of unlawfully stopping and falsely arresting and prosecuting individuals for trespassing in and around New York City Housing Authority ("NYCHA") buildings and other locations and falsifying evidence in connection with those arrests, and the City inadequately screens, hires, trains, and supervises its employees for issues relating to such arrests and prosecution.

57.    Plaintiff's arrest and prosecution is not an isolated incident.  Thousands of individuals, like plaintiff, have been arrested and prosecuted for trespassing without probable cause and the City through the NYPD is aware of these unlawful practices through lawsuits, notices of claims, complaints filed with the NYPD's Internal Affairs Bureau, and the Civilian Complaint Review Board, and extensive media coverage, all of which show that many NYPD officers, including the officers defendants are insufficiently trained in the investigation of purported trespassers, and the probable cause required for making trespass arrests and that they otherwise engage in a practice of falsification to ensure deprivation of liberty.  Majority of these arrests are dismissed because the individuals are either tenants in the NYCHA building or invited guests.

58.    One Court in this district has found that to be exactly the case.  *See Davis v. City of N.Y.*, 959 F. Supp. 2d 324, 355 (S.D.N.Y. 2013) ("In sum, based on plaintiffs' documentary and testimonial evidence, as well as [an expert's] opinions, a reasonable juror could conclude that the City has engaged in a practice of making unconstitutional stops and arrests in and around NYCHA buildings as part of its trespass enforcement practices, and that this practice is sufficiently persistent and widespread to serve as a basis for *Monell* liability.[3]").

---

[3] The *Davis* case is attached hereto as Exhibit 2 and incorporated into this complaint.

59.     The City, at all relevant times, was aware that NYPD officers routinely commit constitutional violations such as those at issue here and has failed to change its policy and or is deliberately indifferent to its effect on innocent individuals.

60.     Defendant City has been on notice that the NYPD officers have been engaged in these types of violations (to wit: arresting and prosecuting individuals for trespassing even when no offense has taken place).  Despite being aware of this, the City through the NYPD failed to take corrective measures to train or re-train its officers so that further constitutional violations do not take place.  As a result of the deliberate indifference, plaintiff suffered injuries.

**WHEREFORE**, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A) full and fair compensatory damages as determined by a jury;

(B) punitive damages in an amount to be determined by a jury;

(C) reasonable attorney's fees and the costs, expenses and disbursements of this action; and

(D) such other and further relief as appears just and proper.

Dated: New York, New York
        January 17, 2018

PAWAR LAW GROUP, P.C.
20 Vesey Street, Suite 1210
New York, New York 10007
(212) 571-0805

By: _____
        Vik Pawar (VP9101)
        Robert Blossner (RB0526)
        *Attorneys for Plaintiff*

13.    The Court retains the power to modify this Order upon application by any party, with appropriate notice, or in its own inherent powers.

Dated:         January __, 2018
               New York, New York

VIKRANT PAWAR                          ZACHARY W. CARTER
PAWAR LAW GROUP, P.C.                   Corporation Counsel of the City of New
*Attorney for Plaintiff*                    York
20 Vesey Street, Suite 1210             *Attorney for Defendants*
New York, New York 10007               100 Church Street, Rm. 3-137
                                       New York, New York 10007

By:_____            By: _____
      Vikrant Pawar, Esq.                    Nana K. Sarpong, Esq.

                                       SO ORDERED:


                                       _____
                                       HON. KATHERINE B. FORREST
                                       UNITED STATES DISTRCIT JUDGE


                                       Dated: _____, 201__

6