UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

DAQUAN TURNER,

               Plaintiff,

     -v-

THE CITY OF NEW YORK, P.O. PAZMINO (Shield # 1662), and P.O. M. PENNANT (Shield # 23307),

               Defendants.

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 6, 2018

17-cv-8563 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

     Plaintiff Daquan Turner ("Turner" or "plaintiff") originally commenced this action by filing a pro se complaint on November 2, 2017. (See Compl., ECF No. 2.) After the Court sua sponte directed plaintiff to amend his complaint to include "sufficient factual allegations regarding the event in question," (ECF No. 5), plaintiff retained counsel and filed amended complaints on January 9, 2018 and January 17, 2018 (ECF Nos. 9, 16). The operative complaint alleges, in sum, that defendants unlawfully arrested, assaulted, and prosecuted plaintiff in violation of 42 U.S.C. §§ 1981 and 1983 as well as the Fourth, Sixth, and Fourteenth Amendments to the United States and New York Constitutions. (See Second Amend. Compl. ("SAC"), ECF No. 16.)

     Currently pending before the Court is defendants' motion for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (ECF No. 36.)

1

Defendants argue, in sum, that plaintiff has failed to state a valid claim for municipal liability against the City of New York (the "City"), and that the City should be dismissed from this action as a result. (See generally Mem. of Law in Supp. of Defs.' Mot. ("Defs.' Mot."), ECF No. 37.) Plaintiff opposed that motion on May 15, 2018 (ECF No. 41), and defendants replied on May 22, 2018 (ECF No. 42).

For the reasons stated below, the Court concludes that defendants' motion must be GRANTED.

I. BACKGROUND

A. The Underlying Events

The following facts are derived from the SAC, and are presumed true for purposes of the pending motion.

Early in the morning on January 31, 2015, plaintiff was leaving a New York City Housing Authority ("NYCHA") building in the Bronx, New York. Around the same time, defendant Officers Pazmino and Pennant (collectively, the "Officers") were responding to a domestic violence call at the same location. The Officers encountered plaintiff and began asking him a series of questions about his previous whereabouts and the domestic violence incident.

Plaintiff informed the Officers that he "had just visited family in the NYCHA building" and "had nothing to do with the domestic violence incident," but the Officers "tackled [him] to the ground, handcuffed him and started beating him up." Plaintiff suffered injuries, and was brought to Jacobi Medical Center ("JMC") for treatment. Coincidentally, the victim of the earlier domestic violence incidence was

being treated at JMC at the same time.  The victim and her family were shown plaintiff's photo, but both the victim and her family "unequivocally stated that plaintiff was not the perpetrator."

Plaintiff alleges that "instead of simply releasing plaintiff from custody" at that point, "defendants attempted to cover up their mistake by subjecting plaintiff to arrest and then charging him with various crimes" other than domestic violence.  Specifically, plaintiff alleges that defendants "drafted false paperwork which was then forwarded to the DA's office for plaintiff's prosecution," and that plaintiff accordingly "spend 48 hours in custody" before being released on his own recognizance by the judge.  Plaintiff subsequently "made repeated trips to the Court" before all charges against him were "thrown out" on August 17, 2015.

B.    Litigation History

Plaintiff commenced this action on November 2, 2017 with the filing of a pro se complaint.  After reviewing plaintiff's initial complaint, and before ordering that it be served on defendants, the Court sua sponte directed plaintiff to amend his complaint to include "sufficient factual allegations regarding the event in question," specifically citing the relevant pleading standard from Iqbal and Twombly.  (ECF No. 5.)  Subsequently, plaintiff retained counsel and filed two amended complaints: one on January 9, 2018 (ECF No. 9) and one on January 17, 2018 (ECF No. 16).  As relevant here, the third count in the SAC alleges that the City is liable for the alleged constitutional violations under § 1983 and Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  (See SAC ¶¶ 44-60.)

3

On March 6, 2018, plaintiff informed the Court that after further investigation, one of the individually-named defendants, "P.O. Farmer," should be dismissed. (ECF No. 29.) The Court granted that request and dismissed defendant Farmer on March 8, 2018. (ECF No. 30.)

Defendants' filed the pending motion for partial judgment on the pleadings on April 30, 2018. (ECF No. 36.) Plaintiff opposed that motion on May 15, 2018 (ECF No. 41), and defendants replied on May 22, 2018 (ECF No. 42). The motion is now fully briefed.

## II. LEGAL PRINCIPLES

### A. Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010) (citation omitted).

At the motion to dismiss stage, a court must construe the complaint liberally, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the non-moving party. See Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001), as amended (Apr. 20, 2001). A complaint survives a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are merely consistent with a defendant's liability." Id. (internal quotation marks omitted). Application of this standard is "context-specific," and requires the reviewing court to "draw on its judicial experience and common sense." Id. at 679. The Court is not "bound to accept as true a legal conclusion couched as a factual allegation." Id. at 678 (internal quotation omitted).

    B.    <u>Municipal Liability</u>

A municipality or other local government entity may be held liable under § 1983, but <u>not</u> on a theory of supervisory liability. See <u>Monell</u>, 436 U.S. at 692. Instead, a plaintiff may only prevail against a municipal entity if the allegedly unconstitutional act "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or was done "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." <u>Id.</u> at 690-91. Thus, to make out a colorable claim of municipal liability under § 1983, a plaintiff must allege: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." <u>Wray v. City of New York</u>, 490 F.3d 189, 195 (2d Cir. 2007) (quotation marks and citation omitted); <u>see also</u> <u>Connick v. Thompson</u>, 563 U.S. 51, 60 (2011).

"A municipal policy may be pronounced or tacit and reflected in either action or inaction." Cash v. Cnty. of Erie, 654 F.3d 324, 334 (2d Cir. 2011); see also Ambrose v. City of New York, 623 F. Supp. 2d 454, 464 (S.D.N.Y. 2009) ("A custom need not be the result of a formal proclamation or law."). Further, a "custom or usage" may give rise to municipal liability where the "discriminatory practices of city officials are persistent and widespread" such that "they could be so permanent and well settled as to constitute a custom or usage with the force of law." Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870-71 (2d Cir. 1992) (quotation marks omitted); see also Connick, 563 U.S. at 61. "[B]efore the actions of subordinate city employees can give rise to § 1983 liability, their discriminatory practice must be so manifest as to imply the constructive acquiescence of senior policy-making officials." Sorlucco, 971 F.2d at 871. Conclusory allegations that a non-supervisory official "acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient." Missel v. Cnty. of Monroe, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order); see also Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ("The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.").

III. DISCUSSION

Defendants seek dismissal only of plaintiff's municipal liability claim against the City, in which he alleges that Officers Pazmino and Pennant violated his constitutional rights pursuant to "custom[s], usage[s], practice[s], procedure[s] or

6

rule[s]" of the City and the NYPD that consist of, inter alia: (1) unlawfully stopping, frisking, and searching persons and subsequently depriving them of liberty through malicious prosecution; and (2) arresting people for trespassing without probable cause and subsequently depriving them of liberty through malicious prosecution. (See SAC ¶ 45-46.) Plaintiff further alleges that the City, though aware of these customs and policies of the NYPD, has been "deliberately indifferent in failing to set measures into place to avoid . . . conduct that results in violation of constitutional rights." (SAC ¶ 45.) Defendants argue, in sum, that this claim must be dismissed for failure to plausibly allege a pervasive custom, policy, or practice that resulted in violation of plaintiff's constitutional rights.

Plaintiff attempts to support his claim that the Officers were acting pursuant to a pervasive NYPD policy or custom based on: (1) vague reference to "numerous lawsuits, complaints and notices" brought against the City, the NYPD, and individual NYPD officers that allege similar constitutional violations; (2) certain statements made by Judge Shira A. Scheindlin in an unrelated civil case, Floyd v. City of N.Y., 813 F. Supp. 2d 417 (S.D.N.Y. 2011)[1]; (3) a conclusory assertion that "[t]housands of individuals, like plaintiff, have been arrested and prosecuted for trespassing without probable cause," and that the City is aware of such instances "through lawsuits, notices of claims, complaints filed with the NYPD's Internal Affairs Bureau, and the Civilian Complaint Review Board, and extensive media coverage"; (4) the decision of Judge Sheindlin in another unrelated case, Davis v.

---

[1] Plaintiff attached copies of Floyd and another case described infra, Davis, to the SAC and asserted that those decisions were "incorporated into th[e] complaint."

7

City of N.Y., 959 F. Supp. 2d 324, 355 (S.D.N.Y. 2013); (5) various conclusory assertions that the City and NYPD are broadly aware of such policies and/or customs and have failed to take any corrective measures. (See SAC ¶¶ 47-60.) But those purported bases, even when considered in their totality and viewed in the light most favorable to the plaintiff, are plainly insufficient to support a municipal liability claim capable of withstanding defendants' motion for judgment on the pleadings.

First, plaintiff's various references to other individuals who have been wrongfully searched and/or arrested are vague and insufficient to state a claim to relief that is plausible in this case under Iqbal and Twombly. Plaintiff asserts, in a conclusory fashion, that the City and NYPD have violated "thousands" of other people's constitutional rights. But plaintiff does not make any specific factual allegations regarding those other people, their claims, or why they are relevant to the allegations raised herein. Besides noting that the City and NYPD (and some individual officers) have faced other complaints and lawsuits, and making the conclusory allegation that those previous complaints involved similar conduct, the SAC does not even attempt to describe or explain the actual similarities between those previous complaints/lawsuits and the incident giving rise to this lawsuit. A complaint must allege "more than a sheer possibility that a defendant has acted unlawfully," and more than "facts that are merely consistent with a defendant's

liability." Iqbal, 556 at 678. The SAC's vague and conclusory assertions regarding previous constitutional violations does neither.

Second, plaintiff's reference to statements made by Judge Scheindlin in two entirely unrelated cases (Floyd and Davis) does nothing to bolster his Monell claim against the City in this case. Plaintiff does not describe how or why the facts or allegations in Floyd or Davis are relevant to the misconduct alleged herein. Further, plaintiff does not even attempt to explain how or why Judge Scheindlin's statements are relevant to the question at hand, which is whether the Officers in this case acted pursuant to a policy and/or custom of the City. The cited statements from Floyd and Davis, as presented in the SAC, are irrelevant to the Court's analysis of the pending motion.

Even assuming that plaintiff did successfully allege a custom or practice for unlawful searches and/or arrests, however, the allegations in the SAC do not create a plausible inference that any such custom or practice was pervasive. See Connick, 563 U.S. at 61 (stating that, for a practice to constitute official municipal policy, it must be "so persistent and widespread as to practically have the force of law"). As previously noted, plaintiff does not even attempt to actually explain how the "thousands" of other instances of misconduct relate to the misconduct alleged herein, or, critically, how many of those previous instances actually involved misconduct. Without further factual support, the other lawsuits and complaints referenced by plaintiff represent nothing more than unproven allegations that are plainly insufficient to support a municipal liability claim. Additionally, reference to

9

certain statements made by Judge Scheindlin (which, the Court notes, were specific to the facts and legal questions at issue in those cases) are immaterial. Whatever evidence was before Judge Scheindlin is not currently before the Court, and is not laid out in the SAC.

In short, the SAC is devoid of the types of factual allegations regarding a pervasive policy or custom that is required to sustain a <u>Monell</u> claim against a municipal entity like the City. For that reason, plaintiff's municipal liability claim must be dismissed.

IV. CONCLUSION

For the reasons stated above, the Court hereby GRANTS defendants' motion for partial judgment on the pleadings at ECF No. 36. The City of New York is hereby dismissed as a defendant in this action.

The Clerk of Court is directed to terminate the open motion at ECF No. 36.

SO ORDERED.

Dated: New York, New York
June 6, 2018

_____
KATHERINE B. FORREST
United States District Judge